UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LAVETTE TAYLOR,

    Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,[1]

    Defendant.

---

17-CV-1011-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 12).

Plaintiff Lavette Taylor brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security denying her Supplemental Security Income Benefits ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Taylor's motion (Dkt. No. 8) is denied and the Commissioner's motion (Dkt. No. 14) is granted.

## BACKGROUND

On January 29, 2014, Taylor filed an application for SSI alleging disability since March 1, 2008 due to "1. Back—Car Accident, 2. Arthritis in Back" (*See* Tr. 152).[2] Born in 1981, Taylor was thirty-two years old at the time of her application. (Tr. 55). Her SSI application was denied on May 12, 2014 (Tr. 66), after which she requested a hearing before an Administrative Law Judge (Tr. 33). On May 26, 2016, Taylor, represented by

---

[1]     The Clerk of Court is directed to amend the caption accordingly.
[2]     References to "Tr." are to the administrative record in this case.

counsel, appeared before Administrative Law Judge Richard N. Staples ("ALJ") for a hearing. *Id.* At the hearing, Taylor amended her alleged onset date to May 6, 2014, and alleged a closed period of disability through March 31, 2016. (Tr. 35-36). On June 7, 2016, the ALJ issued his decision denying Taylor's SSI claim. (Tr. 7-19). After the Appeals Council denied Taylor's request for review of the ALJ's decision on August 10, 2017 (Tr. 1-6), Taylor commenced this action.

## DISCUSSION

I. *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II. <u>Standards for Determining "Disability" Under the Act</u>

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts,

diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 to subpart P of part 404 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §416.920(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §416.920(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §416.945(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §416.920(f). If, based on that comparison, the claimant can perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §416.920(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries his or her burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III. *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating Taylor's SSI claim. Under step one, he found that Taylor has not engaged in substantial gainful activity since her SSI application date. (Tr. 12). At step two, the ALJ concluded that Taylor has the following severe impairments: degenerative disc disease of the cervical and lumbosacral spine, obesity, headaches, and chronic pain in multiple sites. (*Id.*). At step three, the ALJ found that Taylor does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 14). Before proceeding to step four, the ALJ assessed Taylor's RFC during the requested closed period as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. §416.967(b) in that she could lift and/or carry 20 pounds occasionally and 10 pounds frequently; she could stand and/or walk about 6 hours in a typical 8-hour workday; and she could sit about 6 hours in a typical 8-hour workday. However, she could only occasionally balance, stoop, kneel, crouch or crawl; climb ramps and stairs; or climb ladders, ropes or scaffolds.

(Tr. 14). Proceeding to step four, the ALJ found that Taylor has no past relevant work performed at the level of substantial gainful activity. (Tr. 17). Thus, at the fifth step, the ALJ considered Taylor's age, education, work experience, RFC, and the testimony of a vocational expert to conclude that Taylor can perform jobs that exist in significant numbers in the national economy, such as a Cashier, Office Helper, or Mail Clerk. (Tr. 18). Accordingly, the ALJ found that Taylor can successfully adjust to other work and, therefore, that she has not been under a disability within the meaning of the Act since her January 29, 2014 SSI application date. (Tr. 18-19).

IV. *Taylor's Challenge*

Taylor argues that the ALJ's RFC assessment cannot be supported by substantial evidence because (1) Dr. Balderman's consulting opinion was "too vague" and, (2) the ALJ failed to properly apply the treating physician rule to treating opinions and failed to give good reasons for rejecting these opinions. See (Dkt. 8-1 at 1). Specifically, Dr. Balderman, a consultative examiner, opined that Taylor had "moderate limitations" for repetitive bending and lifting due to lumbar disc disease. (Tr. 16, 352). Dr. Wang, a pain specialist and Taylor's treating physician since August 2015, opined in a letter dated May 17, 2016, that "[Taylor] was unable to work when [he] started seeing her. Her pain made it impossible for her to go 8 hours without needing to lie down for a prolonged period of time." (Tr. 403). Taylor's primary care physician, Dr. Siaw, opined that Taylor was "moderately limited in walking, standing, lifting, carrying, pushing, pulling, bending, and stairs or other climbing." (T. 335). Dr. Siaw also stated that these limitations would last four to six months. *Id.*

The ALJ assigned "significant" weight to Dr. Balderman's opinion (Tr. 16); "no" weight to the May 17, 2016 letter from Dr. Wang (Tr. 16-17); and "partial" weight to the opinions provided by Dr. Siaw in the February 2014 assessment. (Tr. 17).

The ALJ's assignment of "significant" weight to Dr. Balderman's opinion is supported by substantial evidence. The record shows that Dr. Balderman not only reviewed Taylor's MRI results, but also conducted his own physical exam. (Tr. 16, 350-52). In doing so, Dr. Balderman provided a detailed account of Taylor's physical abilities and limitations, if any. For example, Dr. Balderman wrote in his assessment:

> MUSCULOSKELETAL: Cervical spine shows full flexion, extension, lateral flexion bilaterally, and full rotary movement

> bilaterally. No scoliosis, kyphosis, or abnormality in thoracic spine. Lumbar spine shows flexion to 60 degrees, full lateral flexion bilaterally, and full rotary movement bilaterally. SLR negative bilaterally. Full ROM of shoulders, elbows, forearms, and wrists bilaterally. Full ROM of hips, knees, and ankles bilaterally. No evident subluxations, contractures, ankylosis, or thickening. Joints stable and nontender. No redness, heat, swelling, or effusion.

(Tr. 351-52). Additionally, Dr. Balderman's use of the term "moderate" in this assessment is not vague. The Court agrees with Taylor's argument in that Dr. Balderman's use of the term "moderate" could constitute vagueness. However, Dr. Balderman's opinion of "moderate" limitations does not stand alone. It is based on the objective MRI results and the in-person physical examination of the Plaintiff. *Compare Brady v. Colvin*, No. 14-CV-5773 (ADS), 2016 WL 1448644, at *8 (E.D.N.Y. Apr. 12, 2016)("The use of the terms 'mild,' 'moderate,' and 'marked,' to describe the Plaintiff's restrictions in 'sitting, standing, and walking' are the kinds of vague terms, which courts have found insufficient to support a determination that a Plaintiff is not disabled under the Act."), *with Boltz v. Berryhill*, No. 15-CV-00587-FPG, 2017 WL 999204, at *3-*4 (W.D.N.Y. Mar. 15, 2017)(a consultative examiner's opinion that plaintiff would have "mild to moderate limitations in routine activities" was not impermissibly vague when the opinion is supported by physician's "own physical examination" and was also "consistent with the medial record as a whole").

The ALJ's assignment of "no" weight to the May 17, 2016 letter of Dr. Wang was proper. The letter indicates in a conclusory and retrospective manner that Taylor was "unable to work when [Dr. Wang] started seeing her." (Tr. 403). *See* 20 C.F.R. §§ 404.1527(d), 416.927(d)(2). Dr. Wang began treating Taylor in August 2015, and the letter was apparently drafted 10 months after the initial treatment. (Tr. 403). The letter is

also inconsistent with the balance of Dr. Wang's assessments of Taylor. For example, in January 2016 (during the alleged closed disability period), Dr. Wang reported that he "[e]ncouraged [Taylor] to start some community activity. The patient is not totally disabled. The patient agrees to think about return back to working force as soon as she is able to." (Tr. 371). In September 2015, Dr. Wang indicated Taylor as being "mobility and ADLs[3] independent." (Tr. 364).

The ALJ did not err in assigning "partial" weight to Dr. Siaw's February 2014 assessment. The findings of "*prolonged* standing/walking, lifting *heavy* items/bending, *etc.*" (emphasis added) in the Medical Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination are conclusory and nonspecific. (Tr. 16, 334-335). Even though the ALJ did not outright reject Dr. Siaw's opinion, he may reject a treating source's opinion if that opinion is brief, conclusory, and unsupported by medical evidence. 20 C.F.R. §§ 404.1527(d), 416.927(d)(2). Further, the Court rejects Taylor's argument that the ALJ was required to seek clarification from Dr. Siaw if the ALJ believed Dr. Siaw's opinion on the February 2014 assessment was vague. The ALJ may render a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision. 20 C.F.R. § 416.927(c)(4). There are over 300 pages of documentation in the record, including other assessments from Dr. Siaw.

---

[3] "ADLs" refer to activities of daily living. (n.d.) *Medical Dictionary for the Health Professions and Nursing.* (2012). Retrieved February 5 2019 from https://medical dictionary.thefreedictionary.com/activities+of+daily+living

## CONCLUSION

For the foregoing reasons, Taylor's motion for judgment on the pleadings (Dkt. No. 8) is denied and the Commissioner's motion for judgment on the pleadings (Dkt. No. 14) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated: February 6, 2019
Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge